I would like to first touch upon the 8th Amendment argument and then talk about the innocent owner defense and the due process defense, and then lastly talk about the excusable neglect argument. Even if you assume that New Century is not an innocent owner in this case, forfeiture of New Century's security interest based solely on its alleged negligence in not doing enough due diligence violates the 8th Amendment excessive fines clause. The district court applied the wrong legal standard in evaluating this argument. The district court compared the excessiveness of a forfeiture solely to conscrime. Well, isn't that what the statute say, says? The cases say that you should also compare it to the offense or, I'm sorry, to the owner, to the conduct of the owner. Well, I'm looking at 983, 18 U.S.C. 983G, in making the determination the court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture. I mean, if somebody in your position, you know, your company's position, is always going to be innocent, all you did was make a loan. But the question is, under the statute, was it disproportionate in relation to the gravity of the offense, conscrime? That would be true if we were analyzing the 8th Amendment from the perspective of Mr. Kahn, but we're analyzing the excessiveness of the fine from the perspective of the owner. How is it a fine at all? I mean, I don't see it. I'm sorry? I don't understand how it is a fine vis-a-vis your client at all. Well, what happened is the district court entered a judgment of forfeiture, which forfeited the entire property to the government, which included Mr. Kahn's junior. You had a junior lien. I mean, that's like any other junior lien holder. Except that it extinguished New Century's junior lien. And that's the real issue here. And that's the excessiveness. Well, that's because you made a loan without having checked the real estate records to see that there were senior encumbrances. Isn't that why you have the title insurance? Yeah. Well, that's true, Your Honor. That's why the title insurance is there. But that doesn't foreclose the possibility, the fact that there is insurance doesn't foreclose the possibility that New Century might be an innocent owner. And in this case, if you view it from the perspective of New Century, and if you examine whether this is an excessive fine to New Century, that is foreclosing its junior lien on the property. Your argument on proportionality is, I want to make sure I understood the premises. Your argument is, even assuming that New Century is not an innocent owner, it still has a proportionality claim. And the reason it should have standing as a claimant, which is what it refers to here, the reason it's got standing to do so is that if the property is worth, let's make up a figure, $350,000, and the government's losses are something far less than that, then the government has some kind of an overage here which would be disproportionate to its actual damages, and that might go to any junior lien holders, including New Century. At a minimum, that is the argument, yes, Your Honor. In this case, Mr. Kahn paid, I think, about $400,000 for the property. And that's the amount that the government traced from the proceeds of the fraud to the property was about $400,000. At the time New Century made its loan, there's evidence in the record that the property was appraised at $500,000. So, and that was back in 2003. So, there's a gap of at least $100,000 there. But the judgment of the district court completely forfeited New Century's junior lien interest. It said that the property is forfeited completely to the U.S. government. Now, even under the case that the government cites, New Century would be entitled to the difference between the government's proceeds of the crime, which is the $400,000, and anything else that they get at the sale. That's the United States versus premises known as 7725 Unity Avenue North case. And that case specifically says, if there's nothing left over after the government satisfies its lien, then the junior lien holders are out of luck. But if any property or proceeds from the sale of the property remain, junior lien holders' claims may be satisfied from the residual property or proceeds. Is that an Eighth Amendment analysis, or is that just the way the statute works? I believe that was in the context of an Eighth Amendment analysis, yeah. But, you know, even if you take it outside, I guess you could take it outside of the Eighth Amendment and just look simply at New Century had a security interest in the property. If it's an innocent owner, then its priority is senior to the government's. If it's not senior to the government, it still has a lien on the property, and it should be entitled to the difference. It's not just the overage. The statute actually says it has to be grossly disproportional. So it's not — a little bit of slippage isn't going to do it. It's got to be way out of whack. The government's interest has to be — you know, let's make up a figure. It has to be $10,000 with property worth $500,000 to be grossly disproportional. I think there's a case law that says you can look at this — at the Eighth Amendment from the context of the owner. You look at what the owner did and determine whether the forfeiture compared to the acts of the owner is grossly disproportionate. And here, at best, New Century was negligent in not doing enough due diligence to discover this. Oh, we're supposed to compare the gravity of — you mean of New Century's crime? Well, New Century didn't commit any crimes here. That's correct. It was negligent. Right. But that's not what the statute says. I go back to what Judge Silverman says. That's — how could you compare the forfeiture to the gravity of New Century? New Century is, if not an innocent owner — your argument is they're an innocent innocent owner, but they're at least — they're at least negligent. But that has nothing to do with the — with the government's claim to the property. The government is standing in line in front of them. I — there are — there are case — there is case law that supports viewing that from that perspective. But I'm also thinking about the Austin case, which I think was the United States v. Austin, the first Supreme Court case that dealt with the issue. And it talks about forfeiture of an owner's property. And it's justified by the negligence of the owner. And therefore — but you have to look — you have to look at whether the negligence of the owner warrants that type of — of punishment. But even if you look at this from the — from the perspective of — You keep using the phrase owner, and the statute says claimant. New Century seems to me that — has the right to — to claim it — to — to claim the title of claimant. But I see where New Century gets to — gets — has a wit of standing to claim that it's an owner. Well, it's an owner of the security interest in the property. And that's what I was talking about. But you're right. The case law says that you look — you have to look at the — the culpability of the claimant. And New Century is a claimant in this case. And therefore, they're — they have standing to assert that the — that the fine is excessive as to them. I don't think it talks about culpability of the claimant. It just says that it's grossly disproportional. And you're — and you're supposed to be comparing it to the gravity of the offense giving rise. So was the property sold? I don't believe it was sold yet. There's no indication in the record that it's been sold yet. Because, I mean, to know whether it was grossly disproportional, wouldn't we have to know how much was traced? You said that was $400,000. And then know what its value is today, or — There's no evidence in the record of what the value is today.  Or what it's sold for. Yeah. The only evidence in the record is that Mr. Kahn purchased the property, I think, at about $2,000 for $400,000. In 2003, when he obtained the — the mortgage from New Century, the appraised value was about $500,000. So — What year? 2003? Yeah. 2003. About August 2003. Yeah. I'd like to talk about the — with respect to the innocent owner argument. The district court denied New Century a trial on the merits and an opportunity to contest the forfeiture of its property interest based on constructive notice from an unseamless pendants. Now, the government admits that the dispositive issue with respect to the innocent owner defense is whether you apply State or Federal law to determine whether New Century was a BFP. And this appears to be an issue of first impression in this circuit. If you take a look at the Nava case, which this circuit decided, there's no dispute that under the — under CAFRA, there — you have to look at — to determine, first, whether the owner — and in this case, I'm talking about the owner of the security interest or New Century — whether the owner has a valid interest in the property. And then, second, you look to determine whether that interest is forfeitable. And the Nava case clearly says that — clearly shows or illustrates that a claimant can have a valid interest in the property even though it's not a BFP. If you might recall, that case involved a drug dealer named Big Vic, and he — the issue was whether his daughter actually owned property that was gifted to her. And the court said that the daughter, even though she did not purchase the property, that she was still the owner of the property and could assert a — she could challenge the forfeiture. But at the same time, she wasn't a BFP because she didn't purchase the property. So that case shows that — that a claimant can have a valid interest in property under State law but still not be a BFP. Therefore, whether someone is a BFP must be decided. It must determine whether the property is forfeitable and, therefore, must be determined under Federal law. There's no dispute that under Federal law, New Century was a BFP. Can I — can I get back to something you said before? Your — I think I understood you to say that — say the house is worth $500,000 and your lien is worth $400 — or the government's interest — the dirty proceeds are $400,000, the house is worth $500,000. If the house is sold, the government would get $100,000 windfall. Correct. And rather than the government getting a windfall, you should be able to participate in that — in that windfall to help repair the damage you suffered to the loss of your lien. That's correct. Okay. How would — how would we implement that? How would that play out? What would you have us do about that? Do they have to sell the house first and then you go back and make a claim? Or, I mean, what do we do about it? Well, the forfeiture judgment entered by the district court said that the entire property is forfeited to the government. And we — obviously on appeal is the issue of reopening that judgment to allow us to assert defenses. And one of the defenses would be the Eighth Amendment, that we would — that it was an excessive fine to forfeit the entire property to the government, given that there were junior lien holders. And therefore, we should be able to — New Century should be able to have a trial on the merits of that defense. If we — if we agreed with you on this, could we say we don't need a new trial on the merits? You just need to amend the judgment to say that if and when the property is sold, any amount over the — the amount that's traceable to the — to the underlying crime can be paid to the — to the next lien holder in line. That's one possible remedy, yeah. Now, there's no dispute in this case that if federal law applies to determine whether New Century is a BFP, that it satisfies that prong. There's no dispute that New Century did, in fact, give $250,000 for its deed of trust and therefore would qualify. Now, the bigger issue here is whether Liz Pendence, as a matter of law, precluded New Century from being a BF — or no, with respect to the knowledge prong. I'm sorry. With respect to the knowledge prong, the district court held that the Liz Pendence, as a matter of law, precluded New Century from satisfying. And if you look at the Round Hill case, which this Court decided, and at the Paradise Valley case, those cases both show that a Liz Pendence does not, as a matter of law, give knowledge of — of the — of the underlying forfeiture litigation. What it does is it makes it more likely that the claimant had knowledge. Of the underlying forfeiture action. And therefore, that's a question of fact, and New Century should be able to have a trial on the merits of that claim, which the — which the judge precluded. With respect to the Johnson letter, the Court applied the wrong standard in saying that the Johnson letter raised a red flag, that the property was somehow related to improper behavior. That's not the correct standard. The correct standard is whether the improper behavior would have subjected the property to forfeiture, because the Court applied the wrong standard in that respect. I thought that the — that the Court's use of the Johnson letter was to try to get around the timeliness problem here. It was trying to get around the 60B problem, trying to determine whether or not we had excusable neglect in failing to come forward in a timely fashion. They talked about that as well. I don't know whether it was from — from a timeliness perspective, but the Court talked about the Johnson letter in two aspects of the opinion. And the first was with respect to whether New Century should have known that the property was subject to forfeiture because the Johnson letter said that Tony Kahn was transferring the property to his aunt ostensibly for the purpose of committee student loan fraud. And the Court's decision said that — that — yeah. Why didn't — why didn't — why didn't American Title — was it American Title? First American? First American Title. Why didn't First American Title run a — run a second title check before it allowed this property to close? They did. They did it on August 7th. So they ran the first title check when the loan was — But that was — apparently the information was only good up through July 21st. That's correct. So why didn't they update it? They closed another week later. First American issued the title insurance, didn't conduct a final title search, and didn't find the — the — I take it that the index is — is what, a posting on a website or something? What's the indexing? It's the physical records at the title — at the recorder's office. Okay. Yeah. If they had been taking care of business, they would have gone to the index and would have seen that — that there was this filing of record before — before the loan closed. Well, First American did what every title company in Orange County does. Well, they do that at their peril, apparently. You know, if this case is any — any example. But if they were — if they were really doing it right, that's — that's why they have an index, so that before it closes, they can go and check and see if there's any last-minute filings. Right. The evidence in the record is that it's financially impractical and physically impossible for all the title companies in Orange County, for every title search, to go to the recorder's office to search the indexes. So that's the risk they — that's the risk — that's the risk that they run, and that's why, I guess, you buy the insurance. That's — that's one way to look at it. That's right. Yeah. But even if — even if First American had done the title search on the true closing date — they anticipated the closing date would be August 7th. If they had done it on August 14th, they still wouldn't have discovered in the — in their title plant, they wouldn't have discovered the leased pendants because the records hadn't been updated yet. Briefly wanted to mention the due process argument, and then save a few minutes for rebuttal, if that's okay. My understanding was that the leased pendants was indexed on July 30th. So if they had done their due diligence on August 14th, they would have picked up the index on — on July 30th. If they had physically gone to the recorder's office to look at the index, that's true. But the evidence in the record is that it's — it's virtually impossible for them, in every case, to do that. Let's — let's suppose that we decided against — against you. Would — does New — does New Century have an action against Tony? If they can find them and if they can find any assets, certainly. How about Ethel? That's a good question. I suppose if she was involved in the fraud. Was it a joint application? It was a joint application, yeah. Yeah. Okay. With respect to the due process argument, there's no dispute that the government did comply with the technical notice — notice requirements by publication. But so did the plaintiffs in the Mulaney v. Central Hanover Bank and Trust Company that the Supreme Court decided. But such notice is still deficient if it is not reasonably calculated to reach those who could be easily informed by other means. Now, in this case, the government published notice of the forfeiture on August 27th and then a few times after that. And on that date, New Century had a recorded interest in the property and could easily have been informed by — You want to put the burden back on the government to go do the title search. It's the same thing that they're trying to put on us, yeah. Exactly right. That if they're going to give notice of a forfeiture, they should — they should do what the Supreme Court says and give notice to those for the addresses that they can reasonably find. Now, on the excusable neglect argument, again, the Court abused its discretion because it applied the wrong standard. The Court did not apply all the pioneer factors. It denied relief based solely on its belief that New Century was in bad faith for not doing its due diligence. But bad faith means deviousness or willfulness, and there's no evidence that New Century was devious at most. It was negligent. So at any rate, the Court applied the wrong standard in not applying all the pioneer factors and also applied the wrong standard with respect to bad faith. You mentioned you wanted to reserve a couple of minutes, and you've got two left. Okay. I'll go ahead and reserve that time. Thank you very much. Let me just make one quick point with respect to the last thing that the Court said in — on the excusable neglect argument, and that was that — that New Century was trying to make an end-run around the — around the California recording laws. But if New Century were to prove that it was an innocent owner, the statute says its interests shall not be forfeited. So at that point, the list pendants and the recording would be — would be completely irrelevant. Thank you. Can I please the Court? Ann Luotto-Wolf for the United States. The law in this circuit is clear. California state law determines New Century's ownership interest in the defendant property. California state property law is equally clear. Since New Century funded the loan and recorded its deed of trust two weeks after the government's list pendants was recorded and indexed, New Century is bound by the forfeiture judgment and cannot be characterized as a bona fide purchaser. New Century concedes that California law determines its ownership interest. What is conspicuously absent, however, from its argument is any analysis under California law. And that's because when you go to California law, California law says in real property cases, we look to the recording statutes. The recording system says we have a race notice jurisdiction. The first interest properly recorded and indexed wins. The government's list pendants was recorded July 24th. It was indexed July 30th, two weeks before New Century acquired its property interest on August 14th. The Eighth Amendment case or analysis that New Century would like the Court to undertake puts the cart before the horse. They have to establish a legally cognizable ownership interest in the defendant property. That's not exactly what the statute says. The case might be a whole lot clearer and everything might be a whole lot clearer if that's what the statute said, counsel. But as I read Section G, proportionality, it merely describes a claimant under Section A-4. So a claimant under Section A-4 may petition the Court to determine whether the forfeiture was constitutionally excessive. If you go back to A-4, you'll see that's anybody describing an interest that's very broadly described. It's people who are applying. It doesn't say somebody who has an ownership interest. Now, maybe you want to argue that there's an Article III problem here and that we have a standing question. But that's not what the statutory language says. I believe it's a statutory standing, however, because they do have to establish that they have statutory standing. And to have statutory standing, they have to be an innocent owner. Additionally, if you look at the other case, I'm looking at G, and G refers us back to A-4. If I look back at A-4, it says, in any case in which the government files the appropriate complaint for forfeiture of property, any person claiming an interest in seized property may file a claim. And that, I think, then makes them a claimant for purposes of the proportionality challenge. So we clearly have a person claiming an interest in the seized property. That would be New Century. The New Century is a claimant. Whether they're a successful claimant or not may depend on other things. Well, then, if you look at Rule G of the rules, excuse me, I always get the terminology confused. But they are the supplemental rules that govern certain or they govern forfeiture cases. But I think they're actually entitled the supplemental rules of the Federal Rules of Civil Procedure that govern certain Admiralty and Maritime claims. And it speaks, subpart C, of a motion to strike a claim or answer that a government may file because the claimant lacks standing. In that rule, it specifically states that the motion must be decided before any motion by the claimant to dismiss the action. And I believe that that is because what they are indicating is that standing is threshold and a claimant must establish both Article III standing and statutory standing before they can challenge the government's right to forfeiture. Now, the government claims that New Century is not an innocent owner for purposes of Section 983. But does the government claim that New Century is not a junior lien holder under the ordinary property rules in California? No. Then how can we say that they don't have an interest? Therefore, wouldn't have standing? Because they are not a they do not qualify as an interest that Congress has recognized. Congress has specifically stated that they will recognize for after acquired interest, in other words, interests that arise after the criminal act giving rise to forfeiture, they are going to recognize only bona fide purchasers for value without notice. And Congress has expressly stated those are the only interests that we're going to recognize. Okay. Can you give me the I see the I see the reference to the supplemental rules for certain admiralty and maritime claims. Can you give me the reference to the rule again in that? Yes. It is Rule G, subpart C. Okay. And where would we find those? Are those rules attached to the Federal Rules of Civil Procedure? Yes, they are, Your Honor. But in any event, returning to the Eighth Amendment claim, the Eighth Amendment, even assuming that they can raise that as a challenge here, it doesn't apply because the government traced 100 percent of the purchase price of the defendant property to ill-gotten gains. Therefore, it cannot be obsessive as a matter of law. What would have happened if we had that type of debt if we were talking about before where the ill-gotten gain is less than what the property sells for, less than what the property is worth? I want to be certain that we're distinguishing between if the purchase, if the initial purchase of the property was paid for 100 percent with ill-gotten gains, because then it is, first of all, the forfeiture judgment relates back. So the government has therefore has the That's the end of the ballgame. Right. We forfeit the entirety of the property, as opposed to if only a portion of the property was purchased with ill-gotten gains. Then, yes, then there would be something left over because there would be a portion of the property that the government perhaps would not be forfeiting. I'm assuming for the sake of the argument that that would be the case. In other words, that we would have commingling. Ill-gotten gains and legitimate funds both are used to purchase the property. Then there might be something left for junior lien holders. However, that is not the case here. And keep in mind as well that this is an in rem action. So we're looking at the guilt, if you would, of the property. The property was purchased 100 percent with ill-gotten gains. So there is nothing left with which to pay the junior lien holders because Without any appreciation, that just, we don't take that into account? The government's entitled to the appreciation. Not only would that be property traceable to the proceeds, but because, again, the property, the forfeiture judgment relates back, the government is entitled to all of the appreciation. We're going to measure the proportionality as at the time the government conducts the forfeiture. And therefore, any appreciation in the value of the property properly belongs to the government. Yes. Yes, Your Honor. And if you, it makes sense, because otherwise, let's say we didn't have a cash-out equity loan in this instance. Then what would we have? We have the wrongdoer here saying, well, I'm entitled to all of the appreciation in the property. No, we would say you are not, because just because you happen to invest your ill-gotten gains wisely doesn't mean you're entitled to keep those proceeds. Did the government, did the district court enter any findings regarding the fact that the property came 100 percent from the proceeds of Mr. Kahn's actions? Yes. There is language in the district court's order. Can you point me to that? I'm attempting to find it, Your Honor. It's a very thorough and lengthy order. I see the language that I was thinking of, Your Honor. And what the court stated is, in the instance, and this is on page 8 of 11. I'm sorry. It's on page what? 8. 8 of the district court record. Oh, no. I'm sorry, Your Honor. DR-116. DR-116. Let me find it here. On the excerpts of record, it is on page 116, yes. And in that portion of the order, he states, in the instant suit, the property was forfeited because it was purchased with the proceeds of Amanullah Kahn's, Tony Kahn's father, aircraft parts fraud scheme. And then he goes on to say, forfeiture of property bought with proceeds from criminal activity is not a violation of the excessive fines clause. So by implication, it could be that that is what he is saying. But certainly it was argued, and it is, in fact, the case. I don't think it's really beyond dispute that the government has traced 100 percent of the purchase price to ill-gotten gains. And that was established on the motion for summary judgment. One of the other issues that I just wanted to clarify is that in the Nava opinion, the court did look to state law, in that case, Montana state law, to determine the claimant's ownership interest in the property. The reason that the court never reached the bona fide purchaser issue was because they were looking at a, the other provision of the innocent owner defense, the one that applies to interests that are, that someone, a claimant has in the property before the act causing forfeiture arises. So those would be preexisting interests, which doesn't have a bona fide purchaser requirement. If you have a preexisting interest, the property could be gifted to you. You could inherit the property. But here, we're talking about after acquired interest, and then you must be a bona fide purchaser for value. That is why the Nava court did not discuss BFP, because the daughter had a preexisting interest in the property that was subject to forfeiture. And additionally, I would also point out that that was a criminal forfeiture case. So therefore, only the defendant's interest in the property was subject to forfeiture as opposed to an MREM action, which again, looks to the property itself as the guilt or innocent being the relevant issue. The only other point that I wanted to make was, again, that this is a cost of the way that title insurance companies choose to do business. It may be that it is not cost effective for them to go and look through the county indexes, but then they run the risk of missing. They know that there is at least, here there was an excess apparently of a two-week lag time between the time that the Liz Pendens was recorded in index and the time that it posted at their title plant. They are well aware of that, and it's a risk that they take. And evidently, it is more cost effective for them to occasionally have to pay out than it would be to have the manpower to go down and look through the indexes. However, it is a cost that title companies can absorb and spread through the premiums that they charge their insurance. And it is... Sorry, I just lost my train of thought. I'm glad you did, because I have another question to ask you. Could you tell me again why they would be entitled to some hearing where they can attempt to show that the forfeiture was disproportionate from the standpoint of the cons? Not from the standpoint of their own wrongdoing, because they don't really have any wrongdoing, but from the standpoint of the gravity of the crime in relation to what's being seized. Well, first, again, I would state that they need to have a legally cognizable ownership interest in the property. And in order to do that, they would have to be an innocent owner, establish that they're an innocent owner, and I don't think that they can do that. But putting that issue aside, if they... That fact was already established in the motion for summary judgment. In other words... What fact? That the... It was not disproportionate? That 100% of the proceeds of the cons' fraudulent scheme were used to purchase the property. Ergo, they cannot... You're saying it's really not, it's not really a penalty at all. They're just getting back money that... That they weren't ever entitled to. Proceeds of a crime... Exactly. Exactly. The only people, really, who have a windfall here are Tony Kahn and Ethel Sampson. They got... If he were a bank robber, he couldn't come back and say, I get to keep, you know, to confiscate the bags of money that I have taken from the bank. It would somehow be disproportionate. I mean, he can't keep any of it. Correct. Okay. That's the same idea here. Exactly. Exactly. The fraudulent, the fraudulent, the monies from the fraudulent aircraft parts scheme went into a main bank account. The government then traced those monies to a second bank account. The government then traced only a portion, enough for the purchase price, to the defendant real property. So just thinking out loud, there's a — once you decide that these are proceeds, there's no more proportionality. If this were, say, an instrumentality of a crime, you know, say a car used in a — in a crime, that's a different story. Precisely. But if you're talking about proceeds, there's nothing to — there's nothing proportional about it. It's like — just like you can't keep the money you steal from the bank. Exactly, Your Honor. That is exactly correct. And, in fact, that would be how you would distinguish full facilitation cases, such as the Austin case, because then that would be a property that was legitimately purchased, but that was used to facilitate crime. Or in the Bagicagian decision, which was a reporting offense, the money itself was not ill-gotten gains. It was legitimately earned. And, therefore, there was, appropriately, an Eighth Amendment analysis. Same with the Thurman case, which is where there was a — there were false statements on a loan application, but the government was seeking to forfeit equity in the claimant's residence. The claimant legitimately purchased her residence. The loan proceeds were 100 percent repaid. Therefore, you were looking at legitimately earned proceeds. In all of those circumstances, an Eighth Amendment analysis is appropriate. It is not, however, when 100 percent of the property that is subject to forfeiture was purchased with ill-gotten gains. I have nothing further unless the Court has additional questions. No. Thank you, Ms. Wolf. Thank you, Your Honor. On the proceeds argument, if you take a look at the Thurman case, that case specifically held that even though there was $200,000 worth of fraudulent proceeds that the claimant obtained, the Court remanded it for a determination as to whether forfeiture of the entire amount of the proceeds was — violated the Eighth Amendment. And that's the same thing here, is that you've got — you may have proceeds, but that doesn't mean that it's automatically that there's — Did the Court envision in Thurman that the wrongdoer could keep part of the proceeds? That's what it appears to be. The woman who committed fraud by submitting a false loan application and false tax ID numbers or false tax returns — The overall magnitude of the fraud here, as I recall, worked into the millions of dollars. And I'm — again, I'm looking at ER 116 in your excerpt of record, the district court's order that was cited by Ms. Wolf. And the district court did say the property was forfeited because it was purchased with the proceeds of Mr. Kahn's aircraft parts fraud scheme. Correct. Now, if that's true, what's the Eighth — what's left of the Eighth Amendment claim? Well, at least the appreciation of the property. Why would the appreciation be? We measure it as a — don't we have to measure it as of the time that the government forfeits this? At the time the government forfeits this, then that would be — then there would be appreciation in the property. I guess I'm not — I'm not sure. Their property to appreciate is — I'm sorry? It's their property that's appreciating. Was that that point? Your — your claim is that the property was purchased for, what, $400,000? Correct. In what year? About 2000. And the government doesn't forfeit it until 2004? Correct. 2003? 2003 is the forfeiture, and that it might have been worth more than — that it was worth more than $400,000? Correct. And so there we have to find — and that that would justify in having — sending it back for an inquiry as to whether it was grossly disproportionate? Correct. So we're not just looking for a little overage here. That's not what the statute says. The statute says grossly disproportionate. Mm-hmm. So that ordinary — ordinary appreciation in the property could still be grossly disproportionate. The cases also say that — that you have to look to the culpability of the claimant. And in this case, New Century is the claimant. And they don't have any culpability. And so to forfeit their security interest as the — as even a junior lien holder would — would be considered in making that determination on all of the factors. In this case, the — the district court only essentially applied one factor. And that was — he looked at the crime, and that was it. But you need to look at a whole multitude of factors to do that. Just really quickly, with respect to — You're really out of time.  Thank you, Your Honor. Thank you. Ms. Wolfe, thank you as well. The case just argued is — is submitted. We'll stand and recess.
judges: Silverman, Wardlaw, Bybee